## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

_____

|  |  |  |
|---|---|---|
| **ERIK SALAIZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SIMPLE FLOW LLC,** a California Limited | § | **Case No. 3:24-cv-00063-KC** |
| Liability Company | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

_____

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1.      Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.      Defendant SIMPLE FLOW LLC ("Simple Flow" "Defendant") is a limited liability

company existing under the laws of California with its principal address at 3 Whitney Road, Sag

Harbor, New York, 11963 and is a Texas foreign limited liability company and can be served via

its registered agent Registered Agents Inc. at 5900 Balcones Drive, Suite 100, Austin, Texas

78731.

3.      Unnamed Party JOHN DOE TELEMARKETER ("John Doe") is an unidentified offshore

telemarketing company that makes solicitation phone calls at the instruction, direction, and

oversight of Defendant Simple Flow.

## NATURE OF ACTION

4.      As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

5.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers placed illegal telemarketing unauthorized calls to him in violation of the TCPA.

6.      As part of marketing their services, Defendant Simple Flow hired and authorized their affiliates/telemarketers to place unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS").

7.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

8.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

9.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 and 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

10.     This Court has personal jurisdiction over the Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

21.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22.    The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23.    Under the TCPA, a text message is a call.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

24.    Plaintiff successfully registered his personal cell phone (XXX) XXX-9280 on the National Do-Not-Call Registry on May 31, 2021, which was more than 31 days prior to receiving the alleged text messages.

25.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

26.    Defendant Simple Flow offers solar panel systems to consumers.

27.    Defendant Simple Flow is owned and operated by Nikolas Borreli.

28.    As part of their marketing, Defendant Simple Flow hired and instructed an anonymous offshore telemarketer to make phone calls on behalf of Defendant Simple Flow to tele solicit their solar panel systems.

29.    John Doe unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

30.     John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Defendant Simple Flow.

31.     Defendant Simple Flow instructs John Doe on what states to call and what hours to make these calls.

32.     Defendant Simple Flow provides John Doe with qualifications a consumer must meet to qualify for Defendant Simple Flow's solar panel systems.

33.     Defendant Simple Flow authorizes John Doe to act as Defendant Simple Flow's agent.

34.     Defendant Simple Flow gives John Doe access to Defendant Simple Flow's sales system in order to enter new client leads.

35.     Defendant Simple Flow approves of the contracts with John Doe.

36.     Defendant Simple Flow authorizes the payments to John Doe.

37.     Defendant Simple Flow pays John Doe out of bank accounts Defendant Simple Flow owns and controls.

38.     Defendant Simple Flow generates substantial solar panel profits from soliciting its services through illegal telemarketing.

39.     John Doe employs the use of an automatic telephone dialing system ("ATDS") in furtherance of their telephone marketing campaign on behalf of Defendant Simple Flow.

40.     Defendant Simple Flow is well aware that the unauthorized phone calls being made on their behalf by John Doe are being made in violation of the TCPA.

41.     John Doe makes these calls on behalf of Defendant Simple Flow without prior express written consent of the consumers they call.

42.     John Doe knowingly and willfully makes solicitation phone calls on behalf of Defendant Simple Flow to consumers that have their residential phone numbers (including cell phones) registered on the National Do-Not-Call Registry.

43.     Defendant Simple Flow has been sued prior to this lawsuit for violating the TCP *Naiman v. Simple Flow LLC*. No. 2:20-cv-00510-JAM-DMC (E.D.CA., Mar. 06, 2020) and continues their illegal behavior for their financial gain.

44.     Plaintiff received at least seven (7) unauthorized calls to his personal cell phone 9280 ("the calls") from John Doe calling on behalf of Defendant Simple Flow soliciting solar panel systems within a thirty-day period.

45.     From the apparent authority of Defendant Simple Flow, John Doe spoofed the Caller ID on every alleged call to Plaintiff's area code (915) to trick Plaintiff into thinking the calls were local.

46.     The calls John Doe made to Plaintiff on behalf of Defendant Simple Flow were not made to Plaintiff directly and could have reached anyone in the United States (indicating the calls were made using an ATDS).

47.     Plaintiff has never been a customer of Defendant Simple Flow, and has had no relationship with Defendant Simple Flow, which is an indication of the use of an ATDS.

48.     Defendant Simple Flow or John Doe had no reason to have Plaintiff's phone number 9280 in their possession or in any database or spreadsheet that would have been used to call Plaintiff.

49.     John Does failed to properly identify themselves or who they were calling on behalf of on every call they made to Plaintiff.

50.     Upon information and belief Plaintiff has received additional calls within the past two years from John Doe calling on behalf of Defendant Simple Flow soliciting solar panel systems that are unknown to Plaintiff at this time but will be revealed during discovery.

51.     **Calls #1-6 -** Plaintiff answered each of these calls and was greeted by telemarketers from John Doe soliciting solar panel systems on behalf of Defendant Simple Flow.

52.     **Calls #1-6 -** Plaintiff advised the telemarketers that he was not interested and disconnected the calls.

53.     **Calls #1-6 -** The calls were not made to Plaintiff directly and could have reached anyone in the United States.

54.     Despite Plaintiff advising the telemarketers he was not interested, the calls continued.

55.     **Call #7** – On December 8, 2023, at 12:06 PM, Plaintiff received a call to his personal cell phone 9280 from John Doe calling on behalf of Defendant Simple Flow from phone number (915) 742-3496.

56.     **Call #7** – Plaintiff answered and was then connected to a male telemarketer with John Doe.

57.     **Call #7** – The telemarketer was soliciting solar panel systems. Plaintiff did not want or need solar panel systems however engaged in the call with the telemarketer for the sole purpose of identifying the company John Doe was making the telemarketing calls on behalf of.

58.     **Call #7** – The telemarketer then asked Plaintiff qualifying questions provided by Defendant Simple Flow regarding Plaintiff's electric provider, cost of Plaintiff's monthly electric bill, Plaintiff's roof condition, and Plaintiff's credit score.

59.     **Call #7** – The telemarketer also asked for Plaintiff's complete name and address confirming the call was not directed to Plaintiff and another indication the calls by John Doe were made using an ATDS.

60.     **Call #7** – The telemarketer then stated to Plaintiff, "so my technician will contact you in two-three hours and will have and will assist you further."

61.     The telemarketer from call seven entered Plaintiff's information as a new client lead into Defendant Simple Flow's sales system.

62.     Later on the same day December 8, 2023, at 3:20 PM, 3:25 PM, and 4:14 PM Plaintiff had missed calls to his phone 9280 from phone number (469) 904-0434.

63.     On December 11, 2023, at 3:21 PM, Plaintiff received another call to his phone 9280 from phone number (469) 904-0434.

64.     Plaintiff answered and was greeted by a sales agent from Defendant Simple Flow named Alec Becerra.

65.     Alec stated to Plaintiff,

"Erik uhm this is Alec calling with Simple Flow you spoke uhm to one of my associates Friday to put together a solar quote."

66.     Alex asked Plaintiff more qualifying questions and solicited Plaintiff for solar panels on behalf of Defendant Simple Flow.

67.     Plaintiff received an email from Alec from abecerra@gosimpleflow.com confirming Alec was a sales agent with Defendant Simple Flow.

68.     With information and belief Defendant Simple Flow relies on John Doe to make telemarketing calls on its behalf, Defendant Simple Flow hired them to interact with the public on Defendant Simple Flow's behalf and therefore gave implied authority to represent Defendant

Simple Flow and call residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

69.    Defendant Simple Flow ratifies the behavior from John Doe by knowing of the illegal conduct and failing to repudiate the conduct.

70.    Plaintiff did not provide his prior express written consent to receive any of the alleged calls.

71.    None of the alleged calls were made to Plaintiff for emergency purposes.

72.    Table A below summarizes the phone calls Plaintiff received from John Doe on behalf of Defendant Simple Flow:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 11/17/2023 | 10:42 AM | 915-757-6352 | Telemarketer calling from John Doe soliciting solar panels, told them not interested. |
| 2 | 11/20/2023 | 2:15 PM | 915-755-5863 | Telemarketer calling from John Doe soliciting solar panels, told them not interested. |
| 3 | 11/24/2023 | 1:01 PM | 915-740-7075 | Telemarketer calling from John Doe soliciting solar panels, told them not interested. |
| 4 | 12/07/2023 | 1:44 PM | 915-757-3802 | Telemarketer calling from John Doe soliciting solar panels, told them not interested. |
| 5 | 12/08/2023 | 9:49 AM | 915-757-3829 | Telemarketer calling from John Doe soliciting solar panels, told them not interested. |
| 6 | 12/08/2023 | 10:48 AM | 915-757-3075 | Telemarketer calling from John Doe soliciting solar panels, told them not interested. |
| 7 | 12/08/2023 | 12:06 PM | 915-742-3496 | Telemarketer calling from John Doe soliciting solar panels. Advised me "his technician" will call me back. |

73.     Defendant Simple Flow employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

74.     Defendant Simple Flow has knowledge of and has adopted and maintained TCPA violations as a sales strategy.

75.      Defendant Simple Flow knew full well that John Doe was calling and harassing consumers in an attempt to procure business on behalf of Defendant Simple Flow because Defendant Simple Flow directed John Doe to make the phone calls and to ignore Do Not Call requests.

76.      Defendant Simple Flow willfully accepts these referrals and compensates John Doe for their illegal phone calls.

77.     Defendant Simple Flow refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant Simple Flow financially.

78.     Upon information and belief, Defendant Simple Flow did not train John Doe who engaged in telemarketing on behalf of Defendant Simple Flow, on the existence and use of Defendant's internal do not call policy as John Doe failed to recognize Plaintiff's personal cell phone 9280 is registered on the National Do-Not-Call Registry.

79.     Defendant Simple Flow is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitation calls into Texas either directly or through John Doe.

80.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain Defendant Simple Flow's registration.

81.     Defendant Simple Flow does not qualify for an exemption under § 302.053.

82.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## **VICARIOUS LIABILITY OF DEFENDANT SIMPLE FLOW**

83.     Defendant Simple Flow is vicariously liable for the telemarketing calls that generated the lead on their behalf.

84.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

85.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

86.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

87.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave

consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

88.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

89.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

90.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

91.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

92.     Defendant Simple Flow is legally responsible for ensuring that John Doe that makes telemarketing calls on behalf of Defendant Simple Flow comply with the TCPA when so doing.

93.     Defendant Simple Flow knowingly and actively directed the phone calls in this Complaint be made.

94.     Defendant Simple Flow instructed John Doe on what states to call, what hours to call, and what to say when the phone calls were answered.

95.     Defendant Simple Flow directed John Doe on the qualifications required for each customer and supplied John Doe with the hardware and software used to enter those qualifications.

96.     Defendant Simple Flow knew (or reasonably should have known) that John Doe was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

97.     Furthermore, Defendant Simple Flow had day-to-day control over the actions of John Doe, including the ability to prohibit them from using an automatic telephone dialing system to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

98.     Defendant Simple Flow also gave interim instructions to John Doe by providing lead-qualifying instructions and lead volume limits.

99.     Defendant Simple Flow donned John Doe with apparent authority to make the calls at issue. Thus, John Doe pitched Defendant's solar panel systems in the abstract.

100.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

101.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

102.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

103.    John Doe transferred customer information, including Plaintiff's contact information, directly to Defendant Simple Flow. Thus, John Doe had the "ability . . . to enter consumer information into Defendant Simple Flow's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

104.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

105.    Defendant Simple Flow is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when John Doe solicited Plaintiff for solar panel systems on behalf of Defendant Simple Flow.

### THE TEXAS BUSINESS AND COMMERCE CODE 305.053

106.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

107.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

108.    Defendant initiated the phone calls alleged herein and is a "seller" under the Texas

Business and Commerce Code because it makes telephone solicitation on its own behalf through

John Doe and authorized third parties such as John Doe that called Plaintiff in this case.

109.    Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or

attempts to effect a telephone solicitation."  Telephone calls initiated by John Doe are

attributable to both them individually and to Defendant.

110.    The actions of the Defendant violated the Texas Business and Commerce Code 302.101

by authorizing John Doe to place solicitation phone calls to a Texas resident on behalf of

Defendant without having a registration certificate and bond on file with the Texas Secretary of

State.

111.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302."  Tex. Bus. & Com. Code §

302.303.

112.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

113.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

114.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

115.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

116.    The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

117.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant Simple Flow.

118.    The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing
### Without Prior Express Written Consent

119.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

120.    Defendant and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without his prior express written consent.

121.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

122.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

123.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## <u>COUNT TWO:</u>
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

124.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

125.    Defendant and/or their affiliates or telemarketers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

126.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

127.    Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

128.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### (Violations of The Texas Business and Commerce Code 305.053)

129.    Plaintiff incorporates the foregoing allegations as if set forth herein.

130.    The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

131.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

132.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FOUR:

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

133.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

134.    Defendant and/or their affiliates or telemarketers made at least seven (7) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

135.    As a result of Defendant's and/or their affiliates or telemarketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

136.    As a result of Defendant's and/or their affiliates or telemarketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by the Defendant violates the TCPA and Texas state law;

C.      An injunction enjoining the Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for seven (7) calls.

E.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for seven (7) calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for seven (7) calls.

G.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for seven (7) calls.

H.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.    An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.    Such further relief as the Court deems necessary, just, and proper.

February 26, 2024,                    Respectfully submitted,


Erik Salaiz
Plaintiff, Pro Se
6320 Navajo Ave
El Paso, Texas 79925
915-252-9280
Salaiz.ep@gmail.com